**S. D'ANTONI, INC., Plaintiff,**

**v.**

**The GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC., Defendant.**

**UNITED STATES of America, Intervenor-Appellant,**

**v.**

**FRUEHAUF TRAILER DIVISION, et al., Creditors-Appellees.**

No. 73-2357.

United States Court of Appeals, Fifth Circuit.

July 5, 1974.

John R. Schupp, Asst. U. S. Atty., Chief, Civ. Div., Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for IRS.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, William S. Estabrook, Jane M. Edmisten, Elmer J. Kelsey, Tax Div., Dept. of Justice, Washington, D. C., for intervenor-appellant.

Charles L. Chassaignac, New Orleans, La., for Fruehauf.

Frank J. Stich, Jr., New Orleans, La., for White Motor Corp.

William W. Messersmith, III, New Orleans, La., for Int'l Harvester Co.

Joseph E. Friend, New Orleans, La., for Uniroyal.

George V. Baus, New Orleans, La., for N. E. England.

Sam Monk Zelden, New Orleans, La., for Mydland.

Peter A. Feringa, Jr., New Orleans, La., for creditors-appellees.

Harvey J. Lewis, New Orleans, La., for S. D'Antoni, Inc.

Carl J. Schumacher, Jr., New Orleans, La., for The Great Atlantic & Pac. Tea Co.

Before RIVES, GEWIN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

█ In this contest between judgment lien creditors and a United States tax lien, we are called upon to determine the correct place for filing a notice of tax lien in Louisiana to ensure a priority claim as to the personal property of a corporate tax debtor over the corporation's judgment lien creditors. The controlling statute, 26 U.S.C.A. § 6323, requires such tax notice to be filed where "the principal executive office of the business" is located. In this case, the Government filed in the Louisiana parish in which the only business office of the debtor was located. The District Court held that the Government's notice should have been filed in the parish containing the debtor corporation's "registered office"—the address designated in its incorporation papers. We reverse.

The personalty at stake in this case is the money paid into the registry of the District Court by the Great Atlantic & Pacific Tea Company, Inc. in settlement of a breach of contract action brought by S. D'Antoni, Inc., the debtor corporation. Before suit was filed, and before the other creditors involved in this case reduced their claims against D'Antoni to judgment, the United States recorded a series of notices of federal tax liens in the mortgage records of the office of the Clerk of Court of Jefferson Parish. Subsequently, the judgment creditors caused D'Antoni's interest in the suit against A & P to be seized by writs of

*Fieri Facias.* The United States intervened, claiming priority based on the notices recorded in Jefferson Parish. Fruehauf Trailer Division, Fruehauf Corporation (representing the other judgment lien creditors under an agreement to prorate the fund should Fruehauf prevail) argued that the Government had filed in the wrong place and should have filed the notices either in Orleans Parish or with the clerk of the federal district court.

█ The general tax lien of the Government, which arises as soon as taxes are assessed and which attaches to all property and rights to property of the tax debtor, prevails against all other unperfected liens with a few statutory exceptions, including judgment lien creditors. Whenever the lien of the United States competes with that of such a protected party, it must be determined whether the United States filed notice of its lien in the proper place prior to the time the competing lienor established his status as a judgment lien creditor. If the tax lien notices, filed before Fruehauf et al. established their status as judgment lien creditors, were filed in the appropriate office, the Government is entitled to priority under the first in time, first in right doctrine. *See* United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed. 2d 770 (1963); United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L. Ed. 520 (1954). If filed in the incorrect place, the notices are without effect and Fruehauf obtains priority.

Under section 6323(a), a federal tax lien is not valid as against a judgment lien creditor until notice thereof has been filed in accordance with the requirements of subsection (f).[1] Subsec-

1. Section 6323 provides in pertinent part:
(a) *Purchase[r]s, holders of security interests, mechanic's lienors, and judgment lien creditors.*—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

(f) *Place for filing notice; form.*—
(1) *Place for filing.*—The notice referred to in subsection (a) shall be filed—
(A) *Under State laws.*—

(ii) *Personal property.*—In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental

tion (f) requires notice of a tax lien against personal property to be filed in the one office designated by state law for the governmental subdivision in which the personalty is situated. Personal property is deemed to be situated at the residence of the delinquent taxpayer and the residence of a corporate taxpayer is deemed to be "the place at which the principal executive office of the business is located." 26 U.S.C.A. § 6323(f)(2). If a state has not designated an appropriate office, the notice is to be filed with the clerk of the federal district court for the district in which the property is situated. Louisiana law provides that federal tax lien notices are to be recorded in the mortgage records of the parish "within which the property subject to such lien is situated." La. Stat.Ann., Rev.Stat. § 52:51.[2] The controlling question before us is, therefore, whether D'Antoni's "principal executive office" was located in Jefferson or Orleans Parish.

The facts are not in dispute. D'Antoni conducted all of its business from its Jefferson Parish location. Its Orleans Parish address, on the other hand, was the "registered office" designated in its incorporation papers and the home address of its president and vice-president, who were also incorporators, directors, and major stockholders.

The District Court held that "principal executive office" referred to

D'Antoni's registered office in Orleans Parish, relying heavily on Gill Trailer & Equipment Rentals, Inc. v. S. D'Antoni, Inc., 267 So.2d 242 (La.Ct.App.1972). That case concerned the same issue and the same debtor involved herein. The Louisiana Court of Appeal held that notice had to be filed in Orleans Parish, concluding from legislative history that

> when Congress used the term "principal executive office" to designate the residence of a corporation for purposes of 26 U.S.C. § 6323, they intended to refer to the statutory residence which varying state statutes assign to corporations. In Louisiana the statutory residence of a corporation is its registered office.

267 So.2d at 246 (footnote omitted).

After the District Court decided this case, however, and subsequent to the filing of the appeal, the Supreme Court of Louisiana reversed the Court of Appeal on the ground that the clear and unambiguous letter of the law should not be disregarded "under the pretext of pursuing its spirit" through the legislative history. La., 282 So.2d 714, 716 (1973), cert. denied, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974).

Although we are not bound by the Louisiana Supreme Court's decision, as indeed the District Court correctly recognized,[3] and conversely the state supreme court did not consider itself

---

subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; or

(B) *With clerk of district court.*—In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State has not by law designated one office which meets the requirements of subparagraph (A);

. . . . .

(2) *Situs of property subject to lien.*—For purposes of paragraph (1), property shall be deemed to be situated—

. . . . .

(B) *Personal property.*—In the case of personal property, whether tangible or intangible, at the residence of the taxpayer at the time the notice of lien is filed.

For purposes of paragraph (2)(B), the residence of a corporation or partnership shall be deemed to be the place at which the principal executive office of the business is located . . . .

2. La.Stat.Ann., Rev.Stat. § 52:51 reads:

Notices of liens for taxes payable to the United States and certificates discharging such liens shall be filed for record in the office of the parish recorder of mortgages of the parish in this state within which the property subject to such lien is situated.

3. The District Court stated in an unpublished Minute Entry, Civ. No. 68–1916 (E. D.La., January 23, 1973):

"Both parties are agreed that the Internal Revenue Code, 26 U.S.C.A. § 6321, gives the government preferential right to the assets

bound by the federal District Court's decision,[4] it may be of some relief to those who cherish predictability in the law to find that we agree with the reasoning of the Louisiana Supreme Court so that henceforth, the law in this particular can be similarly administered in both federal and state forums.

Inasmuch as Fruehauf was not in the state litigation and it asserts an additional argument not considered by the state tribunals, it is in order that we discuss briefly the arguments made before us.

Fruehauf relies, as did the Louisiana Court of Appeal, on the legislative history of the Federal Tax Lien Act of 1966 which enacted the "principal executive office" test. The Senate Finance Committee reported that the purpose of revision was to benefit both creditors and the Government by eliminating, through specific rules, existing uncertainty over the proper filing location. To that end

[t]he amendment requires notice of a tax lien to be filed where a taxpayer resides, and not at his domicile, as presently contended by the Internal Revenue Service, because of the difficulty in determining a person's domicile, based as it is on (among other things) his state of mind. On the other hand, for purposes of determining the residence of corporations and partnerships, the amendment provides specific rules for determining their residence. Under the amendment, the residence of a corporation or a partnership is deemed to be the place at which its principal executive office is located. This is the most readily identifiable of all the offices that a business may maintain, appearing, as it does, on the annual reports filed with most States and on similar returns, and avoids the uncertainty of determining which of the many business offices that a taxpayer may maintain is its principal one.

S.Rep.No.1708, 89th Cong., 2d Sess. (1966), 1966 U.S.Code Cong. & Admin. News, pp. 3722, 3732.

There is substantial merit in Fruehauf's argument that the address listed in the incorporation papers presents an objective standard which would avoid

of its debtor taxpayer as against any judgment lien creditor from the date of the filing of notice which meets the requirements of § 6323(f). In addition, the government has not questioned the status of Fruehauf as a judgment lien creditor. The sole issue which has been raised, briefed and argued is whether the government's recording of notice of the tax lien in the mortgage records of Jefferson Parish does in fact meet the requirements of § 6323(f).

"There appears to be little, if any, reason for this Court to go into a detailed analysis of the issue involved here as the same issue, involving in fact the same debtor—S. D'Antoni, Inc.—has been decided by the Fourth Circuit Court of Appeal of Louisiana in Gill Trailer & Equipment Rent., Inc. v. S. D'Antoni, Inc., 267 So.2d 242 (La.App.1972). While we are not, of course, bound by this decision, this Court is in complete accord with the Louisiana's Court's interpretation of 26 U.S.C.A. § 6323, with special emphasis on the quotation from the Senate Finance Committee at pages 245–246 and the cases cited in footnote 1 at page 246. The evidence presented at the hearing on this matter indicated that S. D'Antoni, Inc.'s registered office is in Orleans Parish, which the Louisiana court also found to be a fact. Therefore, we hold, as did the court in Gill Trailer & Equipment Rent., Inc. v. S. D'Antoni, Inc., *supra*, that '[s]ince no notice of lien was filed by the United States in the parish in which the corporation's principal executive office was located, the lien is not valid against judgment lien creditors.' "

4. The Louisiana Court stated:

"It has been called to our attention that the United States District Court, Eastern District of Louisiana, Section B, in a proceeding arising out of a dispute between the United States Government and Fruehauf Corporation relative to the ranking of claims to proceeds in another matter but involving the same tax debtor, S. D'Antoni, Inc., concluded that it was in accord with the decision of the Fourth Circuit Court of Appeal in the present case. See S. D'Antoni, Inc. v. The Great Atlantic and Pacific Tea Company, Inc., Civil Action No. 68–1916, January 23, 1973. That matter is presently on appeal to the Fifth Circuit Court of Appeal. We do not consider that we are bound by any expression of that court in a consideration of the matter herein."
282 So.2d at 717.

uncertainty and might increase the likelihood of actual notice to creditors of federal tax liens. In the case of a corporation with multiple offices, any test directed at determining the most important office is to some extent subjective. Creditors and the Government could in good faith reach different conclusions as to the appropriate location for filing of federal tax liens. The difficulty with this argument is that, despite the legislative history, it contravenes the plain words of the statute. Section 6323 does not refer, as it easily could have, to the address used to incorporate the business; it speaks of "the principal executive office of the business." The natural import of the statutory language is the headquarters of the business—the office at which the major executive decisions affecting the business are made.

Further, the passage from the legislative history quoted above reveals that Congress rejected the concept of domicile as determinative of the proper place for filing of tax lien notices. A corporation's domicile is determined by the place in which it incorporates, which may bear no relation to the location of the company's business operations or its decision-making activities. The Louisiana concept of "registered office" is one of domicile, see La.Stat.Ann., Rev.Stat. § 12:104(B), and the state corporation statute clearly contemplates the possibility that a company's principal business activities may be carried on elsewhere. See id. § 12:103.

■ The Supreme Court of Louisiana noted an additional argument against Fruehauf's assertion that Congress intended D'Antoni's "registered office" to be its residence for federal tax lien purposes. Congress applied the "principal executive office" test to both corporations and partnerships. Use of the "registered office" interpretation would prevent the application of the test to partnerships. See 282 So.2d at 716. Statutes should be so construed as to give effect to all their parts. 2A Sutherland, Statutory Construction § 46.06 (4th ed. 1973).

We therefore hold that the tax lien notice filed by the Government in the Jefferson Parish mortgage records satisfied the requirements of section 6323(f).

Fruehauf contends in the alternative that the Louisiana provision for recordation of tax lien notices, La.Stat.Ann., Rev.Stat. § 52:51, is invalid and that the proper place to file the notices in this case was the clerk's office of the United States District Court. The basis of Fruehauf's argument is that the Louisiana Recordation Act was enacted prior to the Federal Tax Lien Act of 1966 and was not amended to conform to the 1966 federal law. As Fruehauf reads the Louisiana provision dating from 1940, it allows tax lien notices to be filed in each parish in which personal property of a corporation is situated. Federal law, however, now requires notice to be filed only where the corporation's "principal executive office" is located. Thus, the argument runs, Louisiana "has not by law designated one office which meets the requirements of subparagraph (A)" and tax lien notices must accordingly be filed with the clerks of the federal district courts in Louisiana as provided in section 6323(f)(1)(B).

This argument casts doubt upon tax lien filings in Louisiana and a substantial number of states, which have similarly worded statutes.[5] Nothing in the legislative history of the Federal Tax Lien Act of 1966 indicates that Congress intended or expected the Act to invalidate existing state legislation. The

5. See Alas.Stat. § 43.10.090; Ark.Stat.Ann. § 51–101; Del.Code Ann. tit. 25, § 3101; Ill. Ann.Stat. ch. 82 § 66 (Smith-Hurd Supp. 1974); Ind.Stat.Ann. § 49–3221 (Burns), IC 1971, 17–3–50–1; Ky.Rev.Stat. § 382.480; Me.Rev.Stat.Ann. tit. 33, § 664; Miss.Code Ann. § 89–5–47; Ann.Mo.Stat. § 14.010 (Vernon); N.J.Stat.Ann. § 46:16–13 (Supp. 1974); Ohio Rev.Code § 317.09 (Page Supp.1973); S.C.Code § 65–2722; Tenn. Code Ann. § 64–2110; Utah Code Ann. § 38–6–1; Vt.Stat.Ann. tit. 9, § 2051; Rev. Code Wash.Ann. § 60.68.010; Wyo.Stat. § 29–111.

change in the place of filing rules was designed to do away with conflicting court rulings as to where personal property was situated. S.Rep.No.1708, *supra,* at 3732. Section 6323(f)(1)(B) merely limits the authority of the states by ignoring their enactments if they designate more than one office for filing within a given governmental subdivision. *Id.* The Louisiana statute designates the one office within the parish where the filing is to be made.

 Nor can the Louisiana provision, simply because it tracks the language of the pre-1966 federal law, be said to conflict with the new federal requirement that the state designate an office in the place where the taxpayer resides. The purpose of Louisiana's federal tax lien recordation provision was to authorize filing of lien notices in accordance with the provisions of existing federal law and "any acts or parts of acts amendatory thereof." La.Stat.Ann., Rev.Stat. § 52:55.[6] The Louisiana statute designates appropriate offices for filing tax lien notices, specifying recordation in "the office of the parish recorder of mortgages of the parish . . . within which the property . . . is situated." But federal law governs questions bearing on the operation and enforcement of federal tax liens. United States v. Brosnan, 363 U. S. 237, 240, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960). Federal law, thus, determines where the property is situated for purposes of section 6323. Walker v. Paramount Engineering Co., 353 F.2d 445 (6th Cir. 1965); *see* Grand Prairie State Bank v. United States, 206 F.2d 217 (5th Cir. 1953). The federal statute fixes the situs of personal property at the residence of the taxpayer. Thus, section 52:51 complies with the requirements of section 6323(f)(1)(A). Subparagraph (B) of that section, concern-

ing filing in federal district courts, therefore, does not apply.

 The proper place in Louisiana for filing tax lien notices against personal property is the office of the parish recorder of mortgages for the parish in which the taxpayer resides, which is deemed to be, in the case of a corporation, the location of its principal executive office. That is where the Government filed in the instant case. Its tax lien is therefore entitled to priority over subsequently perfected judgment liens. Accordingly, the judgment of the District Court is

Reversed and remanded.

---

**6.** Section 52:55 reads:

This Chapter is passed for the purpose of authorizing the filing of notices of liens in accordance with the provisions of Section 3186 of the Revised Statutes of the United States, as amended by the Act of March 4, 1913, 37 Statutes at Large, page 1016, and any acts or parts of acts amendatory thereof.